Reynolds Am. Inc. v. Third Motion Equities Master Fund Ltd., 2018 NCBC 93.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

REYNOLDS AMERICAN INC.,

           Plaintiff,

v.

THIRD MOTION EQUITIES
MASTER FUND LTD.; MAGNETAR
CAPITAL MASTER FUND, LTD.;
SPECTRUM OPPORTUNITIES
MASTER FUND LTD.; MAGNETAR
FUNDAMENTAL STRATEGIES
MASTER FUNDS LTD.;
MAGNETAR MSW MASTER FUND
LTD.; MASON CAPITAL MASTER
FUND, L.P.; ANTON S.
KAWALSKY, trustee for the benefit
of Anton S. Kawalsky Trust UA
9/17/2015; CANYON BLUE CREDIT
INVESTMENT FUND L.P.; THE
CANYON VALUE REALIZATION
MASTER FUND, L.P.; CANYON
VALUE REALIZATION FUND,
L.P.; BLUE MOUNTAIN CREDIT
ALTERNATIVES MASTER FUND
L.P.; BLUEMOUNTAIN FOINAVEN
MASTER FUND L.P.;
BLUEMOUNTAIN GUADALUPE
PEAK FUND L.P.;
BLUEMOUNTAIN SUMMIT
TRADING L.P.; BLUEMOUNTAIN
MONTENVERS MASTER FUND
SCA SICAV-SIF; AMUNDI
ABSOLUTE RETURN CANYON
FUND P.L.C.; CANYON-SL
VALUE FUND, L.P.; PERMAL
CANYON IO LTD.; CANYON
VALUE REALIZATION MAC 18
LTD.; and BARRY W. BLANK
TRUST,

           Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7086

**ORDER AND OPINION ON BCR 10.9
DISPUTE**

1.    **THIS MATTER** is before the Court upon Plaintiff Reynolds American Inc.'s

("Reynolds") and Defendants Third Motion Equities Master Fund Ltd., Magnetar

Capital Master Fund, Ltd., Spectrum Opportunities Master Fund Ltd., Magnetar Fundamental Strategies Master Fund Ltd., and Magnetar MSW Master Fund Ltd.'s (collectively, the "Magnetar Defendants") Business Court Rule ("BCR") 10.9(b)(1) discovery dispute summaries contained in the parties' August 15, 2018 Joint Report on the Status of Fact Discovery.

2.      On September 6, 2018, the Court held a BCR 10.9 telephone conference to address Reynolds and the Magnetar Defendants' dispute, at which all parties were represented by counsel.  This Order memorializes the Court's oral ruling made on that conference call.

> *Cravath, Swaine & Moore LLP, by Gary A. Bornstein and Thomas G. Rafferty, and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Donald H. Tucker, Jr., Christopher B. Capel, and Clifton L. Brinson, for Plaintiff Reynolds American Inc.*
>
> *Lowenstein Sandler LLP, by Sheila A. Sadighi, Maya Ginsburg, and Lawrence M. Rolnick, and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jennifer K. Van Zant and Jessica Thaller-Moran, for Defendants Mason Capital Master Fund, L.P., Anton S. Kawalsky, Canyon Blue Credit Investment Fund L.P., Canyon Value Realization Master Fund, L.P., Canyon Value Realization Fund, L.P., Blue Mountain Credit Alternatives Master Fund L.P., BlueMountain Foinaven Master Fund L.P., BlueMountain Guadalupe Peak Fund L.P., BlueMountain Summit Trading L.P., BlueMountain Montenvers Master Fund SCA SICAVSIF, Amundi Absolute Return Canyon Fund P.L.C., Canyon-SL Value Fund, L.P., Permal Canyon IO Ltd., and Canyon Value Realization MAC 18 Ltd.*
>
> *Abrams & Bayliss LLP, by Sarah E. Delia and Kevin G. Abrams, and Ellis & Winters LLP by George F. Sanderson, III and Troy D. Shelton, for Defendants Magnetar Capital Master Fund, Ltd., Magnetar Fundamental Strategies Master Fund Ltd., Magnetar MSW Master Fund Ltd., Third Motion Equities Master Fund Ltd., and Spectrum Opportunities Master Fund Ltd.*

*Shanahan McDougal, PLLC, by Gregg E. McDougal, Brandon S. Neuman, and H. Denton Worrell, for Defendant Barry W. Blank Trust.*

Bledsoe, Chief Judge.

I.

BACKGROUND

3. This lawsuit is a judicial appraisal action under N.C. Gen. Stat. § 55-13-30 to determine the fair value of Defendants' common stock in Reynolds. On July 25, 2017, Reynolds merged into an indirect, wholly owned subsidiary of British American Tobacco p.l.c. Defendants are former Reynolds shareholders.

4. On May 4, 2018, Reynolds served its First Request for Production of Documents Directed to All Defendants (the "Requests"). Requests 1–3 seek documents related to (1) "any purchase, sale or other transaction involving [Reynolds] Securities by Defendants" or other persons or entities acting on their behalf, with them, or under their control; (2) "any ownership of any [Reynolds] Securities by Defendants" or other persons or entities acting on their behalf, with them, or under their control; and (3) "the value of [Reynolds] Securities from August 1, 2016 through July 25, 2017."[1] (Joint Report Status Fact Disc. Ex. A, at 7–8, ECF No. 84.)

5. The Magnetar Defendants' BCR 10.9 summary objects to Reynolds's Requests 1–3 to the extent the Requests seek documents relating to Reynolds securities "other than the [Reynolds] common stock subject to the Magnetar Defendants' appraisal demand." (Joint Report Status Fact Disc. 19, ECF No. 84.)

---

[1] The Requests defined "[Reynolds] Security" as "any [Reynolds] security, as 'security' is defined in the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, including but not limited to [Reynolds] Common Stock." (Joint Report Status Fact Disc. Ex. A, at 4.)

The Magnetar Defendants contend that such documents are irrelevant to the subject matter of this litigation—the value of the Magnetar Defendants' common stock in Reynolds. The Magnetar Defendants argue that the fair value of this common stock is "determinable solely upon information" Reynolds already possesses. (Joint Report Status Fact Disc. 20.)

6. At the BCR 10.9 telephone conference on this matter, the Magnetar Defendants presented further arguments against the Requests. It appears from the Magnetar Defendants' representations during the conference that, in addition to objecting to providing Reynolds with documents concerning Reynolds securities other than common stock, the Magnetar Defendants are objecting to producing documents related to Reynolds common stock other than the specific shares subject to the Magnetar Defendants' appraisal demand. The Magnetar Defendants also argue that Requests 1–3 are unduly burdensome in that they will require the Magnetar Defendants to seek documents from custodians other than the three custodians Reynolds and the Magnetar Defendants previously agreed upon.

7. Reynolds contends that the Magnetar Defendants' objections are inapposite and unsupported. Though the Court will ultimately determine the value of Defendants' common stock, Reynolds argues, the bigger question the Court must consider while doing so is the fair value of Reynolds. Reynolds asserts that "[d]ocuments related to the value of [Reynolds] Securities—whether common stock or some other form of security—are unquestionably relevant to the value of [Reynolds]." (Joint Report Status Fact Disc. 18.) Reynolds also argues that the Magnetar

Defendants have not shown any undue burden that would result from answering Requests 1–3 and thus asks the Court to order the Magnetar Defendants to respond to those Requests.

II.

LEGAL STANDARD

8. Parties participating in an action for judicial appraisal under N.C. Gen. Stat. § 55-13-30 are entitled to the same discovery rights as parties in other civil proceedings. *See* N.C. Gen. Stat. § 55-13-30(d); Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 27.04 (7th ed. 2017). These rights allow a party to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." N.C. R. Civ. P. 26(b)(1). "The relevancy test for discovery is not the same as the relevancy test for admissibility into evidence. To be relevant for purposes of discovery, the information need only be 'reasonably calculated' to lead to the discovery of admissible evidence." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978). The decision to compel discovery is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Maldjian v. Bloomquist*, 245 N.C. App. 222, 226, 782 S.E.2d 80, 83 (2016).

III.

ANALYSIS

9.       There is little case law in North Carolina addressing judicial appraisal actions under section 55-13-30.  Robinson, *supra*, § 27.06[1] ("There is no reported North Carolina decision determining the fair value of shares in an appraisal proceeding.").  It is therefore unsurprising that the question raised by the parties' current dispute—whether documents dealing with corporate securities that are not the specific subject matter of a shareholder's appraisal action may nevertheless be relevant to valuing the subject shares—appears to be one of first impression in this State.  Delaware's courts, in contrast, have previously dealt with discovery disputes in the judicial appraisal context, and the Court finds their reasoning compelling.[2]

10.       "Several Court of Chancery decisions have ordered production of pre-suit valuation material prepared by appraisal petitioners."  *In re Dole Food Co.*, 114 A.3d 541, 549 (Del. Ch. 2014) (citing cases).  Such decisions view documents containing information on the pre-litigation value of shares to be relevant not only to "the central issue in the proceeding, which is the value of the subject company," but also to issues of expert methodologies and witness credibility.  *Id.*; *In re Netspend Holdings, Inc.*, No. 8807-VCG, 2014 Del. Ch. LEXIS 96, at *1 (Del. Ch. June 3, 2014).

11.       These cases are persuasive.  Statutory appraisal actions are not "fault-based case[s] in which one side has the burden of proof and loses if it fails to meet its

---

[2] The decisions of Delaware's courts are not binding upon this Court, but North Carolina courts frequently "look to Delaware courts for guidance regarding unsettled business law issues." *Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 331 (N.C. Ct. App. 2016).

burden," *Dole Food Co.*, 114 A.3d at 549, but proceedings in which each side attempts to prove its respective valuation to the court by a preponderance of the evidence, *M.G. Bancorporation v. Le Beau*, 737 A.2d 513, 520 (Del. 1999); *see also* N.C. Gen. Stat. § 55-13-30(a) (requiring the court "to determine the fair value of the shares and accrued interest" in a judicial appraisal action). The court must determine a fair value for the shares in question with or without the aid of expert opinions provided by the parties or court-appointed appraisers. *See Dole Food Co.*, 114 A.3d at 550; *see also* N.C. Gen. Stat. § 55-13-30(d) ("The court may appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value.").

12. In making the determination of fair value, the "court can consider a wide range of factual evidence, including, but not limited to, the market price, the merger price, other offers for the company or its assets, prices at which knowledgeable insiders sold their shares, internal corporate documents . . . and valuation work prepared for non-litigation purposes." *Dole Food Co.*, 114 A.3d at 550; *see also* N.C. Gen. Stat. § 55-13-01(5) (providing that the "fair value" of a corporation's shares should be determined "using customary and current valuation concepts and techniques generally employed for similar business in the context of the transaction requiring appraisal"). Even where the parties have retained credible experts, the court should consider "factual evidence relating to valuation as a cross-check, or reality-check, on the litigation-driven figures generated by [those] experts." *Dole Food Co.*, 114 A.3d at 550. In short, documents pertaining to pre-suit valuations of a

company or its shares assist the court in weighing the validity and credibility of each party's stance in the appraisal proceeding.

13. Mindful of the wide range of factual evidence Delaware courts properly consider in similar cases, the Court cannot agree with the Magnetar Defendants' relevance argument against Requests 1–3. Though documents related to other Reynolds securities may be less relevant or pertinent to the Court's final determination of fair value than documents dealing directly with the Magnetar Defendants' common stock that is the subject matter of this action, information concerning other Reynolds securities may still shed light on the overall value of Reynolds and assist the Court in assessing witness credibility. *See id.* at 549. The Court thus concludes that the documents sought by Requests 1–3 are reasonably calculated to lead to the discovery of admissible evidence and are relevant under North Carolina Rule of Civil Procedure 26.

14. Further, although the BCR 10.9 summaries submitted by the parties posed this dispute to the Court as one concerning Reynolds securities other than Reynolds common stock, to the extent the Magnetar Defendants are objecting to producing common-stock-related documents that are held by other persons or entities associated with or under the control of one or more Magnetar Defendants, the Court still finds the Magnetar Defendants' relevance argument unpersuasive. The Magnetar Defendants have not asserted that these documents are not within their possession, custody, or control and have indicated that the documents deal directly with Reynolds

common stock—the same class of shares the Court must appraise. As a result, the Court considers these documents relevant for discovery purposes under Rule 26.

15. Finally, the Court has considered the Magnetar Defendants' contentions that Requests 1–3 are unduly burdensome and disagrees. The simple fact that Requests 1–3 may seek documents possessed by individuals or entities outside those custodians upon which the Magnetar Defendants and Reynolds previously agreed does not cast an undue burden on the Magnetar Defendants in the circumstances of this case. Should the risk of undue burden increase as the Magnetar Defendants begin to collect documents responsive to Requests 1–3, the Court retains its right to revisit the undue burden issue for good cause shown.

IV.

CONCLUSION

16. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** the Magnetar Defendants to produce to Reynolds non-privileged documents consistent with Reynolds's Requests 1–3.

**SO ORDERED**, this the 12th day of September, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge